IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIDIA MARTINEZ,<br>　　　PLAINTIFF, | ) <br>) Case: <br>) |
| vs. | )<br>) Judge: |
| NORTHWESTERN MEMORIAL<br>HEALTHCARE,<br>　　　DEFENDANT. | )<br>)<br>)<br>) **JURY DEMAND** |

## COMPLAINT

**NOW COMES** Plaintiff, **LIDIA MARTINEZ** (hereinafter referred to as "Plaintiff"), by and through her attorney, Danielle A. Pinkston, of the Pinkston Law Group, P.C. as and for Complaint against Northwestern Memorial Healthcare (hereinafter referred to as "Defendant" or "NMH"), alleges as follows:

### NATURE OF THE CASE

1. This action arises from Defendant's wrongful investigation and termination of Plaintiff, Defendant blatant denial of Plaintiff's most basic rights under the United States and Illinois Constitutions, Defendant's flagrant violations of Plaintiff's rights pursuant to the other employment agreements, and Defendant's patent failure to follow its own procedures with respect to the investigation of certain alleged misconduct by Plaintiff.

2. Upon information and belief, Defendant's employees, acting within the scope of their employment, terminated Plaintiff because she is Hispanic of Mexican origin.

3. Upon information and belief, Defendant's employees, acting within the scope of their employment, terminated Plaintiff because Plaintiff complained of Defendant's employees and their failure to follow NMH policies and procedures. This information and belief, as

1

explained further below, is based on the fact of Plaintiff's reporting coupled with the absence of any legitimate reason for Plaintiff's termination.

4. Not one of the departments involved in Defendant's abusive treatment of Plaintiff has ever stepped forward to clearly enunciate what Plaintiff is alleged to have done wrong. Plaintiff has been the subject of several hidden investigations by Defendant. Not one of these entities has ever informed Plaintiff what specific ordinances, other provision she violated or with concrete proof of how she violated them.

**PARTIES**

5. Plaintiff, **LIDIA MARTINEZ**, is a Hispanic female, whose origin is from Mexico, resides in the United States, and is a former employee of Defendant, NMH at all times relevant to this suit, until her termination in September 1, 2017, Plaintiff met the definition of an "employee" or "eligible employee" under all applicable statutes.

5. Defendant, **NORTHWESTERN MEMORIAL HEALTHCARE (NMH)** is a domestic corporation, incorporated in the State of Illinois, with a principal executive office located at 251 East Huron Street, Chicago, in the County of Cook, State of Illinois. At all relevant times, Defendant NMH met the definition of an "employer" under all relevant statutes. Defendant is not a federal governmental agency, is engaged in commerce or an industry affecting commerce, and regularly employs more than 500 employees at or within 75 miles.

**JURISDICTIONAL STATEMENT**

6. Title VII claims of the Civil Rights Act of 1964, discrimination, 42 U.S.C. §1981, equal rights under the law 28 U.S.C.§1331, federal question, 28 U.S.C.§1343(a)(3),

damages and 42 U.S.C.§2000e-5(f)(3), unlawful employment practices; 42 U.S.C.§1981, and 775 ILCS 5/1–101 *et seq.*

**VENUE**

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff'' rights under Section 1981 and the Equal Pay Act. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

8. Pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e), venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district

**STATEMENT OF CLAIM**

9. On or around December 2014, Plaintiff accepted a full-time temporary position at NMH, as a Financial Assessor for about 14-15 months.

10. After six (6) months of working with KForce, Plaintiff's supervisor at Northwestern, Vanessa Ramirez vouched for her to receive a raise.

11. Plaintiff became a full staff at Northwestern in November 2015, and dealt with solving billing issues, taking payments, processed financial assistance applications, applied adjustments to accounts with supervisor approval, assisted with training new hires, and was a part of new epic launch project in June 2016.

12. In June of 2016, Plaintiff was chosen to work at the main hospital in the billing office because she was trusted by her supervisor and manager due to her work ethic.

13. During her time at Northwestern Plaintiff never received complaints or write-ups, was frequently complimented on her work performance, and her job performance met Defendant's legitimate expectations.

14. In September 2016, Plaintiff received her first annual review and was rated a 4 with 5 being the highest, exceeding expectations and received my raise.

15. In February 13, 2017, Plaintiff received a job in the Emergency Department as a Registration Representative and was advised that her hourly pay would be lateral.

16. During training for this new role, Plaintiff sat with a regular representative named Oukiima Dixon, shadowed her for a few hours. Ms. Dixon let Plaintiff register people in Triage (front desk) under her log in.

17. The next few days Ms. Martinez trained with the Team Lead, Erika Smith, who let Ms. Martinez register people and collect money under her name.

18. Plaintiff trained on the first shift for a little two weeks, then went on nights where the other workers ignored her, would not answer her questions, and no one on 3rd shift talked to her.

19. One of Plaintiff team leads, Joanna Griffin, told Plaintiff that she was supposed to collect money for her under her login, so she could meet her goal.

20. Ms. Martinez told her she was not doing that, and Ms. Griffin said she had to because it was what everyone did, "help" each other meet their goal. Ms. Griffin stated she would give Ms. Martinez and another coworker her user login, so they could collect money on her behalf.

21. Ms. Griffin saw Ms. Martinez take a payment of $300.00 and confronted her in front of another coworker stating she was supposed to give her the payments.

22. According to NMH's handbook, employees are not to provide others with /her login information.

23. Plaintiff engaged in statutorily protected activity and made complaints to her OC Anthony Wallace.

24. Shortly after Plaintiff engaged in statutorily protected activity and made complaints she was subjected to a materially adverse action as a result.

25. Ms. Martinez's OC Anthony Wallace, Joanna, and the other coworker all had a meeting, but Ms. Griffin continued denying that she told Plaintiff to collect on her behalf.

26. Ms. Griffin continued to harass, treat Ms. Martinez differently by not talking to her, avoided her, and targeted Ms. Martinez to be terminated.

27. On August 31, 2017, Ms. Martinez received her annual review from Tina Reagan around 6:00 am and was rated a 3 with 5 being the highest.

28. Her rating was low because she did not meet the Discharge Work Queue (work queue that everyone is supposed to work when there is down time) failing to consider the fact that Ms. Martinez worked in the Emergency Room, where there was rarely any down time.

29. Ms. Martinez believes the review was merely a tool used to tarnish her record, so Ms. Reagan could find a reason to fire her and she was completely shocked because she worked so hard and always met her goals.

30. On September 1, 2017, on her way home, Ms. Martinez received a phone call from Ms. Reagan at 12:09 pm, terminating her employment.

31. Ms. Reagan read Ms. Martinez a script advising that she had broken the rules and shared patient or employee information, but she did not know what information she could give.

32. On September 1, 2017, before 1:30 pm Ms. Martinez went up to HR office and filed the appeal paperwork, but she was not allowed to see anyone from Human Resources.

33. As Ms. Martinez was sitting in human resources she overheard a conversation with a white gentleman and the HR associate that he was to go to meet with Ms. Reagan.

34. Ms. Martinez was banned from NMH.

35. On the way home, Ms. Martinez received a call from Kearsten Bloomik, who was upset and stated they were unable to appeal due to local authorities being involved.

36. Ms. Martinez tried to explain to her that no one had questioned her, and she still did not know why she was fired.

37. Ms. Griffin and the other supervisors and managers communicated on a regular basis.

38. They knew Ms. Griffin was mad at Ms. Martinez for disobeying her commands to work under her login in order to increase her numbers and help her meet her goals, all against company policy.

39. Ms. Reagan terminated Ms. Martinez because of her race, national, origin, and in retaliation for filing a complaint and making statements about how Ms. Griffin violated NMH rules and regulations.

40. Prior to reporting violations under NMH policies, Plaintiff had never been disciplined or reprimanded in any manner.

41. On information and belief, Defendant fired several Hispanic and black employees in order to hire non-Hispanic employees as replacements.

42. Ms. Martinez's termination was unjustified and unlawful as NMH lacks concrete evidence that she "broke rules" and shared patient or employee information.

43. NMH stated that, based its decision to terminate Ms. Martinez and others, including at least one non- Hispanic employee, on the basis of credible evidence that Ms. Martinez violated NMH's Rules for Personal Conduct. Based on the evidence obtained during NMH's investigation into allegations against Ms. Martinez, violated NMH's policies Plaintiff had never seen proof of these violations.

44. Defendant stated on numerous occasions that the Chicago Police Department is investigating Plaintiff.

45. Plaintiff does not know which detective and has never been questioned.

46. The actions of Defendant were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

47. The CEO of NMH is liable to Plaintiff for aiding and abetting these unlawful employment practices in violation of 775 ILCS 5/1–101 *et seq* because he knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of 775 ILCS 5/1–101 *et seq*

48. Ms. Martinez sought relief by filing for a "right to sue" letter from the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964. She filed her complaint with the EEOC on prior to March 23, 2018, the date indicated on the Supplemental Complaint.

49. On April 24, 2019, Plaintiff through her attorney received a "right to sue" letter. **(Pl.'s Exhibit A, Notice of Right to Sue Letter).**

50. Any and all other prerequisites to the filing of this suit have been met.

**FIRST CAUSE OF ACTION: RACE DISCRIMINATION**
**(Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17)**
**Against All Defendant**

51. Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

52. Plaintiff is Hispanic and a member of a protected class.

53. Her job performance met her employer's legitimate expectations.

54. Plaintiff suffered an adverse employment action was treated in a disparate manner and subjected to defendant's unfair policies and practices in that plaintiff was treated unequal and unlike white similarly situated, employees.

55. These differential terms and conditions of employment and Defendant's conduct was motivated by the fact that Plaintiff's race is Hispanic, national origin is Mexican and this was not experienced by white similarly situated employees.

56. This treatment or adverse employment action was not welcomed by Plaintiff.

57. The unfair policies and practices both limited plaintiff in *her* job assignments and other benefits because of her race and national origin and further resulted in *her termination* from employment

58. On information and belief, similarly situated Caucasian employees were treated more favorably under similar circumstances.

59. The above actions were taken by the Defendant to deprive Plaintiff of employment and other contractual opportunities because of her race.

60. By the actions described above, among others, Defendant have discriminated against Plaintiff on the basis of her race and/or color in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are white, including, but not limited to, subjecting them to disparate working conditions and

denying her equal terms and conditions of employment equal to that of employees who are white.

61. Defendant's reasons for terminating Plaintiff are a pretext being that it had no basis in fact; did not actually motivate the decision; or was insufficient to motivate the decision.

62. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, compensation and benefits, loss of career opportunities, loss of fringe and retirement benefits loss of future income, for which she is entitled to an award of damages.

63. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice, for which she is entitled to an award of compensatory damages.

64. Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages.

**WHEREFORE**, Plaintiff, LIDIA MARTINEZ, demands the following relief:

A. Compensatory damages for any wages, salary, employment benefits, or other compensation denied or lost because of Defendant's wrongful conduct to be determined at trial;

B. Punitive damages because of Defendant's wrongful conduct to be determined at trial;

C.  Require Defendant to stop allowing discriminatory practices and take steps to prevent discrimination in the future;

D.  Back wages, salary, or benefits were lost, damages equal to the actual monetary losses sustained by Plaintiff because of Defendant's wrongful conduct;

E.  Attorney's fees, expert witness fees, and court costs;

F.  Pre and Post Judgment interest; and

G.  Such equitable relief as may be appropriate.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Section 1981)**
**Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17**

65. Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

66. Plaintiff engaged in statutorily protected activity and made complaints to her OC Anthony Wallace.

67. Shortly after Plaintiff engaged in statutorily protected activity and made complaints she was subjected to a materially adverse action as a result.

68. Ms. Martinez's OC Anthony Wallace, Joanna, and the other coworker all had a meeting, but Ms. Griffin continued to deny that she told Plaintiff to collect on her behalf.

69. Ms. Griffin continued to harass, treat Ms. Martinez differently by not talking to and avoided her, and targeted Ms. Martinez to be terminated.

70. Ms. Reagan fired Ms. Martinez because of her race, national, origin, and in retaliation for filing a complaint and making statements about how Ms. Griffin violated NMH rules and regulations.

71. Prior to reporting violations under NMH policies, Plaintiff had never been disciplined or reprimanded in any manner.

72. Upon information and belief, Defendant improperly targeted, investigated, suspended and terminated Plaintiff in retaliation for cooperating with and otherwise providing information voluntarily to these federal and Illinois investigative agencies.

73. This information and belief are based on the fact that there was no just cause for Plaintiff's termination.

74. By the actions described above, among others, Defendant retaliated against Plaintiff and for making protected complaints regarding discrimination on the basis of race to, among others, members of Northwestern Memorial Healthcare.

75. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, compensation and benefits, loss of career opportunities, loss of fringe and retirement benefits, loss of future income for which she is entitled to an award of damages.

76. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, extreme emotional distress, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice, for which she is entitled to an award of compensatory damages.

77. Defendant's unlawful and retaliatory conduct were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages.

**WHEREFORE**, Plaintiff, LIDIA MARTINEZ, demands the following relief:

A. Compensatory damages for any wages, salary, employment benefits, or other compensation denied or lost because of Defendant's wrongful conduct to be determined at trial;

B. Punitive damages because of Defendant's wrongful conduct to be determined at trial;

C. Awarding Plaintiff punitive damages in an amount to be determined at trial;

D. Back wages, salary, or benefits were lost, damages equal to the actual monetary losses sustained by Plaintiff because of Defendant's wrongful conduct;

E. Attorney's fees, expert witness fees, and court costs;

F. Pre and Post Judgment interest; and

G. Such equitable relief as may be appropriate.

**THIRD CAUSE OF ACTION**
**(Harassment/Hostile Work Environment Due to Race Discrimination)**
**Title VII claims of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et seq.**

78. Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

79. The harassment was severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment.

80. Plaintiff suffered an adverse "tangible employment action" as a result of the hostile work environment.

81. There is basis for employer liability.

82. Considering the totality of the circumstances, including such factors as the severity and pervasiveness of NMH conduct and its frequency, that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

83. Plaintiff believed her work environment to be hostile or abusive because of this conduct.

84. Plaintiff was subjected to unwelcome harassment by supervisors and managers Tina Reagan and Johanna Griffin.

85. Plaintiff's supervisors' and managers' conduct was motivated by Plaintiff's race.

86. The harassment was severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment.

87. As a direct and proximate result of Defendant's unlawful conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, compensation and benefits, loss of career opportunities, loss of fringe and retirement benefits loss of future income, for which she is entitled to an award of damages.

88. As a direct and proximate result of Defendant's unlawful conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice, for which she is entitled to an award of compensatory damages.

89. Defendant's unlawful and retaliatory conduct were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages.

**WHEREFORE**, Plaintiff, LIDIA MARTINEZ, demands the following relief:

A. Declaring that Defendant's violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Illinois Constitution;

13

B. Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C. Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D. Awarding Plaintiff back pay and all economic and non-economic damages to which she is entitled;

E. Awarding Plaintiff compensatory damages in an amount to be determined at trial;

F. Awarding Plaintiff punitive damages in an amount to be determined at trial;

G. Awarding Plaintiff reasonable costs and attorneys' fees pursuant; and

H. Granting such other relief as is just and necessary.

**FOURTH CAUSE OF ACTION**
**(Due Process Violation – Deprivation of Property Interest)**
**Fourteenth Amendment**

90.  Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

91. Defendant and Plaintiff entered an oral and/or written agreement for employment at NMH.

92. Plaintiff satisfied all conditions required of her under the agreement.

93. In addition, Plaintiff was a model employee.

94. Pursuant to the agreement, Defendant could not terminate Plaintiff without cause and without following its procedures.

95. The agreement, therefore, gave Plaintiff a property interest in her position at NMH as well as retirement options, health, and other benefits attendant that position.

96. This property interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

97. Article 1, Section 2 of the Illinois Constitution also prohibits the deprivation of a property interest without due process of law.

98. Plaintiff's termination without cause and without an adequate notice and a meaningful opportunity to be heard has deprived and will continue to deprive Plaintiff of her property interests without due process of law in violation of the Fourteenth Amendment.

99. Defendant's acts herein proximately caused the aforementioned due process and Fourteenth Amendment violations and resulted in lost wages and benefits, unemployment compensation, other economic damages, and emotional pain and suffering.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

A. Declaring that Defendant's violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Illinois Constitution;

B. Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C. Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D. Ordering Defendant to pay Plaintiff back wages;

E. Ordering Defendant to reimburse Plaintiff for all medical expenses that would have been otherwise covered by Plaintiff's health insurance;

F. Awarding Plaintiff compensatory damages in an amount to be determined at trial;

G. Awarding Plaintiff punitive damages in an amount to be determined at trial;

H. Awarding Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

I. Granting such other relief as is just and necessary.

**FIFTH CAUSE OF ACTON**
**(Due Process Violation – Deprivation of Liberty Interest)**

100.	Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

101.	Plaintiff possessed a constitutionally protected liberty interest in her reputation and her ability to find employment within the City and elsewhere.

102.	This liberty interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

103.	Article 1, Section 2 of the Illinois Constitution prohibits the deprivation of a liberty interest without due process of law.

104.	Defendant's improper statements to the EEOC during its "investigation" and the Unemployment Insurance Officers for Plaintiff to receive benefits before charges had been levied against her, its repeated statements concerning the alleged bases and grounds for Plaintiff's termination, and its statements to other governmental entities concerning Plaintiff's alleged misconduct has stigmatized Plaintiff and has effectively limited Plaintiff's ability to pursue, resume or maintain gainful employment with Defendant.

105.	Defendant's position regarding Plaintiff has essentially defamed her character.

106.	This defamation was coupled with a termination from employment.

107.    Plaintiff's good name, reputation, honor, integrity was adversely impacted by Defendant's conduct, including without limitation the revelation to the press that the Inspector General was investigating Plaintiff.

108.    Defendant stigmatized Plaintiff as undesirable as a municipal or government employee by publicly ridiculing, suspending, and terminating him without providing her with a meaningful opportunity to clear her name in violation of her rights under the Fourteenth Amendment, the Illinois Constitution, and 42 U.S.C. § 1983.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

A.  Declaring that Defendant's violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Illinois Constitution;

B.  Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C.  Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D.  Awarding Plaintiff back pay and all economic and non-economic damages to which she is entitled;

E.  Awarding Plaintiff compensatory damages in an amount to be determined at trial;

F.  Awarding Plaintiff punitive damages in an amount to be determined at trial;

G.  Awarding Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

H.  Granting such other relief as is just and necessary.

## SIXTH CAUSE OF ACTION
### (Misrepresentation)
### State Law Claim

109. Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

110. On information and belief, NMH made false statements of material fact and misrepresented that Ms. Martinez would have a career with them and made representations of permanent employment or no discharge without cause and investigation.

111. On information and belief, when NMH made these representations, it knew or should have known that these representations were false, or it alternatively made them without knowledge of their veracity.

112. On information and belief, NMH at least negligently misrepresented and/or negligently omitted material facts.

113. Plaintiff reasonably relied upon the misrepresentations and omissions, effectuating intended effect to induce Plaintiff to accept employment with them.

114. Plaintiff was actually induced to accept employment with them by its misrepresentations and omissions.

115. Had Plaintiff known that NMH representations were false, she would not have to accept employment with them.

116. NMH's negligent actions caused Plaintiff to rely on them and she suffered injuries, for which they are entitled to damages and other legal and equitable relief.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

A. Declaring that Defendant's violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Illinois Constitution;

B. Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C. Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D. Awarding Plaintiff back pay and all economic and non-economic damages to which she is entitled;

E. Awarding Plaintiff compensatory damages in an amount to be determined at trial;

F. Awarding Plaintiff punitive damages in an amount to be determined at trial;

G. Awarding Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

H. Granting such other relief as is just and necessary.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract)**
**State Law Claim**

117.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

118.     NMH entered into an oral and/or written agreement with Plaintiff, containing a promise sufficiently clear that an employee, Plaintiff would reasonably believe a promise had been made constitutes a valid and enforceable contract.

119.     The agreement was disseminated in a manner causing Plaintiff, a former employee to believe that an offer had been extended.

120.     The agreement was accepted by the employee's commencement of employment or continued work.

121.     Plaintiff substantially performed under the contract.

122.     NMH breached the contract by terminating Plaintiff without an adequate investigation or following any of its procedures and Plaintiff's termination was against public policy.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

A.  Declaring that Defendant's violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Illinois Constitution;

B.  Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C.  Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D.  Awarding Plaintiff back pay and all economic and non-economic damages to which she is entitled;

E.  Awarding Plaintiff compensatory damages in an amount to be determined at trial;

F.  Awarding Plaintiff punitive damages in an amount to be determined at trial;

G.  Awarding Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

H.  Granting such other relief as is just and necessary.

**EIGHTH CAUSE OF ACTION**
**(Discrimination in Violation of IHRA 775 ILCS 5/1–101 *et seq* )**
**State Law Claim**

123.  Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

124.  Defendant discriminated against Plaintiff on the basis of her race, ethnicity and/or national origin, in violation of the IHRA 775 ILCS 5/1–101 *et seq* by denying Plaintiff the same terms and conditions of employment available to employees who are white.

125.  Defendant termination of Plaintiff violates clear mandates of public policy.

126.  As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation the 775 ILCS 5/1–101 *et seq.* Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, compensation and benefits, loss of career opportunities, loss of fringe and retirement benefits loss of future income, for which she is entitled to an award of damages.

127.  As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation the 775 ILCS 5/1–101 *et seq.* Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice, for which she is entitled to an award of compensatory damages.

128.  Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

A.  Declaring that Defendant's violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Illinois Constitution;

B.  Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C.  Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D.  Awarding Plaintiff back pay and all economic and non-economic damages to which she is entitled;

E.  Awarding Plaintiff compensatory damages in an amount to be determined at trial;

F.  Awarding Plaintiff punitive damages in an amount to be determined at trial;

G.  Awarding Plaintiff reasonable costs and attorneys' fees pursuant; and

H.  Granting such other relief as is just and necessary.

**NINTH CAUSE OF ACTION**
**(Retaliation in Violation of 775 ILCS 5/1–101 *et seq*)**
**State Law Claim**

129.    Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

130.    Plaintiff engaged in statutorily protected activity and made complaints to her OC Anthony Wallace.

131.    Ms. Martinez's OC Anthony Wallace, Joanna, and another coworker all had a meeting, but Ms. Griffin continued denying that she told Plaintiff to collect on her behalf.

132. Shortly after Plaintiff engaged in statutorily protected activity and made complaints, she was subjected to a materially adverse action.

133. Ms. Griffin continued to harass, treat Ms. Martinez differently by not talking to and avoided her, and targeted Ms. Martinez to be terminated.

134. Shortly after, Tina Reagan terminated Ms. Martinez because of her race, national, origin, and in retaliation for filing a complaint and making statements about how Ms. Griffin violated NMH's rules and regulations, in violation of the IHRA 775 ILCS 5/1–101 *et seq*.

135. Defendant termination of Plaintiff violates clear mandates of public policy.

136. Prior to reporting violations under NMH policies, Plaintiff had never been disciplined or reprimanded in any manner.

137. By the actions described above, among others, Defendant retaliated against Plaintiff and for making protected complaints.

138. By the actions described above, among others, Defendant have retaliated against Plaintiff on the basis of their protected activities in violation of the 775 ILCS 5/1–101 *et seq.* by, *inter alia*, ignoring their protected complaints about the discriminatory treatment of non-white, by subjecting her to increased harassment and ultimately terminating her employment.

139. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation 775 ILCS 5/1–101 *et seq* Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, compensation and benefits, loss of career opportunities, loss of fringe and retirement benefits loss of future income, for which she is entitled to an award of damages.

140. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation the 775 ILCS 5/1–101 *et seq.* Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice, for which she is entitled to an award of compensatory damages.

141. Defendant's unlawful and retaliatory conduct were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

A. Declaring that Defendant's violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Illinois Constitution;

B. Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C. Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D. Awarding Plaintiff back pay and all economic and non-economic damages to which she is entitled;

E. Awarding Plaintiff compensatory damages in an amount to be determined at trial;

F. Awarding Plaintiff punitive damages in an amount to be determined at trial;

G. Awarding Plaintiff reasonable costs and attorneys' fees; and

H. Granting such other relief as is just and necessary.

**TENTH CAUSE OF ACTION**
**(Harassment/Hostile Work Environment Due to Race Discrimination)**
**State Law Claim**

142. Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

143. The harassment was severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment.

144. Plaintiff suffered an adverse "tangible employment action" as a result of the hostile work environment.

145. There is basis for employer liability.

146. Considering the totality of the circumstances, including such factors as the severity and pervasiveness of NMH conduct and its frequency, that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

147. Plaintiff believed her work environment to be hostile or abusive because of this conduct.

148. Plaintiff was subjected to unwelcome harassment by supervisors and managers Tina Reagan and Johanna Griffin.

149. Plaintiff's supervisors' and managers' conduct was motivated by Plaintiff's race.

150. The harassment was severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment.

151. As a direct and proximate result of Defendant's unlawful conduct in violation of 775 ILCS 5/1–101 *et seq*, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, compensation and benefits, loss of career

opportunities, loss of fringe and retirement benefits loss of future income, for which she is entitled to an award of damages.

152. As a direct and proximate result of Defendant's unlawful conduct in violation of 775 ILCS 5/1–101 *et seq*, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice, for which she is entitled to an award of compensatory damages.

153. Defendant's unlawful and retaliatory conduct were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under 775 ILCS 5/1–101 *et seq* for which Plaintiff is entitled to an award of punitive damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

A. Declaring that Defendant's violated Plaintiff's rights under the Illinois Constitution;

B. Enjoining Defendant from further acts in deprivation of Plaintiff's right to unemployment benefits;

C. Ordering immediate expungement from Plaintiff's personnel records of any documents or references which reflect adversely on Plaintiff as a result of the misconduct alleged herein;

D. Awarding Plaintiff back pay and all economic and non-economic damages to which she is entitled;

E.  Awarding Plaintiff compensatory damages in an amount to be determined at trial;

F.  Awarding Plaintiff punitive damages in an amount to be determined at trial;

G.  Awarding Plaintiff reasonable costs and attorneys' fees pursuant; and

H.  Granting such other relief as is just and necessary.

## JURY DEMAND

154.    Plaintiff hereby demand a trial by jury on all issues of fact and damages stated herein.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: July 22, 2019                                        Respectfully submitted,

                                                            /s/ Danielle A. Pinkston

                                                            _____
                                                            Danielle A. Pinkston
                                                            Atty. No.: 6302271
                                                            PINKSTON LAW GROUP, P.C.
                                                            55 East Monroe St. Ste. #3800
                                                            Chicago, IL. 60603
                                                            Office: (773) 770-4771
                                                            Fax: (773) 770-4772
                                                            dpinkston@pinkstonlawgroup.com
                                                            Atty. for: LIDIA MARTINEZ