IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LIDIA MARTINEZ,

    Plaintiff,

v.

NORTHWESTERN MEMORIAL
HEALTHCARE,

    Defendant.

No. 19-cv-04923

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

To win a claim of race-based employment discrimination under Title VII of the Civil Rights Act of 1965, an employee must establish both that she suffered an adverse action by her employer and that such action was "because of" the employee's race. If the employee fails to establish either of those conditions, her claim must fail. It follows from this binary framework that merely firing or retaliating against an employee—without proof that racial animus motivated that conduct—cannot lead to liability under Title VII.

Plaintiff Lidia Martinez worked at Defendant Northwestern Memorial Hospital until Northwestern fired her. What caused Northwestern to give Martinez the proverbial pink slip is disputed. Northwestern argues that it reasonably believed Martinez was stealing from patients in violation of the Hospital's Rules for Personal Conduct. (Dkt. 57 at 1–2, 6–8.) Martinez counters that the Hospital terminated her based on her race and as retaliation for Martinez's having complained about race-based discrimination. (Dkt. 104 at 4.) In this lawsuit, Martinez sets forth a six-count

complaint: termination based on race (Count I); retaliation for complaints regarding race (Count II); harassment based on race (Count III); wrongful termination in violation of Illinois public policy (Count IV); breach of contract (Count V); and fraudulent or negligent misrepresentation Count VI). (*See generally* Dkt. 6.)[1]

Martinez's claims fail as a matter of law. As explained below, Martinez has neither established a prima facie case of race discrimination, nor has she identified sufficient facts in the record to show that she suffered race-based retaliation, harassment, or a hostile work environment during her employment. Martinez also cannot show sufficient evidence of a public policy that Northwestern violated in firing her or that Northwestern violated the terms of any written or oral employment contract. Finally, Martinez's fraudulent misrepresentation claim is both inadequately pleaded and bereft of facts sufficient to show a genuine, material issue for which a trial is needed. Accordingly, Northwestern is entitled to summary judgment on all counts.

## I.    BACKGROUND

Northwestern Hospital engaged Lidia Martinez as a full-time employee in November 2015. (Dkt. 56 ¶ 7.) Manager Tina Reagan hired Martinez for an open Patient Registration Representative position on the overnight shift. (*Id.* ¶¶ 14–15.) Martinez's job responsibilities included registering patients, collecting patients' insurance and payment information, and collecting payments for services. (*Id.* ¶¶ 20–23.) Reagan was one of six managers, each of whom reported to Sara Williamson,

---

[1] Plaintiff's claims arise under federal and state law. Jurisdiction is proper in this Court because Plaintiff's Counts I–III arise under Title VII and Section 1981, 28 U.S.C. § 1331, and Plaintiff's Counts IV-VI arise from the same transaction or occurrence. 28 U.S.C. § 1367.

Director of the Patient Services Center, who in turn reported to Lydia Splan, the Vice President of Access. (*Id.* ¶ 16.)

Shortly after she was hired, Martinez received a copy of Northwestern's *Rules for Personal Conduct* set of standards and behavior and signed that she had read and reviewed those rules. (*Id.* ¶ 7.) Martinez also signed indicating that she read and reviewed Northwestern's *Privacy and Confidentiality: Patient, Employee, and Hospital Information* document. (*Id.* ¶ 8.) As a Patient Registration Representative, Martinez had access to a wide range of personal information protected by the *Privacy Policy*. (*Id.* ¶¶ 21–24.) In addition to digital information, Patient Registration Representatives collected patients' personal valuables, which are placed into a safe. (*Id.* 25–26.) The safe requires a numerical code to open, and many Patient Registration Representatives do not have access to the code or the safe. (*Id.*)

In August 2017, Northwestern received multiple telephone calls claiming that three Registration staff members—Danielle Coleman, Juenell Jackson, and Ashia Cowin—misused patient information, including credit card information. (*Id.* ¶¶ 27–31.) Reagan reported the calls to Williamson and Span, as well as employees in Compliance, Human Resources, and Security. (*Id.* ¶¶ 32–33.) Northwestern then verified the complaints. (*Id.* ¶¶ 35–40.) Northwestern coordinated with the Chicago Police Department to seek further evidence, and, after Williamson and Splan determined sufficient evidence to justify the decision, tasked Reagan with terminating Coleman's employment. (*Id.* ¶¶ 46–47.) Reagan provided Coleman with a Disciplinary Action Report and termination notice. (*Id.*)

After Coleman's termination, a whistleblower within Northwestern reached out to Security to share "screenshots" of text messages that the whistleblower alleged to be a conversation with Jackson. (*Id.* ¶¶ 52–54.) The text messages explained various malfeasance planned by Coleman, Jackson, and Cowin—as well as a co-worker "Lydia" who allegedly obtained the code to the valuables' safe. (*Id.* ¶ 53.) Reagan informed Williamson and Human Resources that she was confident Jackson sent the text messages due to references to Jackson's personnel review earlier that day. (*Id.* ¶¶ 55–56.) Splan decided, and Williamson agreed, that Jackson and Cowin should be terminated given the text messages and the misconduct further informed by Security's investigation. (*Id.* ¶¶ 57–59.) Reagan prepared the Disciplinary Action Reports and terminated Cowin on August 31 and Jackson on September 1. (*Id.* ¶¶ 62–63.)

Between the terminations of Cowin and Jackson, the whistleblower shared text messages with Security, also allegedly from Jackson, alleging that Martinez shared the safe's code with Cowin. (*Id.* ¶ 62.) The text messages also stated that Martinez occasionally stole bags out of the safe. (*Id.*) Williamson, Splan, and HR decided to terminate Martinez's employment as well. (*Id.* ¶ 65.) Martinez's Disciplinary Action Report incorrectly copied the information in Jackson's Report claiming misuse of credit card information. (*Id.* ¶ 67.) Martinez's report cited to the policy under which Martinez was terminated ("Violation of NMHC CR Policy #04.0022 Rules for Personal Conduct, Section II B16") regarding stealing others' property. (*Id.* ¶ 68.) Northwestern took additional security measures following the four employees' termination. (*Id.* ¶¶ 70–78.)

Martinez contends that unlawful discrimination motivated her termination rather than the allegations that she took valuables from the safe. (Dkt. 105 ¶ 10.) Martinez alleges that, shortly after she transitioned from a temp role to a full-time role, her supervisor (Reagan) exhibited racial animus by stating she did not want to see minority employees further their careers. (*Id.* ¶ 4.) As one example of the hostility Reagan is alleged to have shown to minorities, Reagan sometimes brought snacks or treats for the first and second shifts, as opposed to the allegedly more minority-represented third shift. (*Id.* ¶ 5.) Martinez also claims that she was occasionally frustrated with comments made by her shift's Operations Coordinator, Anthony Wallace. (*Id.* ¶ 13.) Martinez argues that there was little evidence accusing her of theft beyond the text messages, and that, had Martinez been Caucasian, Northwestern would have more fully investigated the claim before termination. (*Id.* ¶¶ 20–36.) Martinez further alleges that, shortly after her termination, she observed a Caucasian male asking for directions to Reagan's office to interview for Martinez's position. (*Id.* ¶¶ 18–19.) And Martinez contends that complaining to Wallace contributed to her termination. (*Id.* ¶ 12.) Finally, Martinez alleges that, when she was hired as a full-time employee, Northwestern entered into an oral contract with her guaranteeing her employment so long as she met Northwestern's standards. (*Id.* ¶ 77.)

## II. LEGAL STANDARD

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable to Plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III.    DISCUSSION

### A.    Defendant's Motion for Summary Judgment (Dkt. 53)[2]

*1.    Title VII and 42 U.S.C. § 1981 Race Discrimination Claim*

Martinez claims that, when it terminated her employment, Northwestern illegally discriminated against her on the basis of her Hispanic race in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981. (Dkt. 6 ¶¶ 61–71.)

---

[2] As the Court grants the motion for Summary Judgment (Dkt. 53) on all claims, it dismisses the Motion to Dismiss (Dkt. 14) as moot. *See*, *e.g.*, *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 492 (7th Cir. 2011).

Northwestern contends that Martinez has not pleaded sufficient facts to support this Count. For the reasons explained below, the Court agrees with Northwestern.

Because they require the plaintiff to prove the same prima facie elements, claims under both Title VII and Section 1981 can be analyzed together. *Hobbs v. City of Chicago*, 573 F.3d 454, 460 n.1 (7th Cir. 2009) (citing *Antonetti v. Abbot Labs.*, 563 F.3d 587, 591 n.4 (7th Cir. 2009)). To assess a Title VII claim, the Court must consider "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Although it is not mandatory, one method a plaintiff can choose to pursue her claim is the "*McDonnell Douglas* 'burden-shifting framework.'" *McDaniel v. Progress Bell Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McDonnell Douglas* and its well-known framework permits a plaintiff to show a prima facie case by demonstrating that she: (1) is a member of a protected class; (2) met the defendant's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees not members of the protected class. *McDaniel*, 940 F.3d at 368. If the plaintiff meets each of the four factors in the prima facie case, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the

plaintiff to submit evidence the employer's explanation is pretextual." *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719–20 (7th Cir. 2018)).

At the summary judgment stage, even if the plaintiff fails to succeed under *McDonnell Douglas*, the Court must assess that evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765; *see McDaniel*, 940 F.3d at 368 (7th Cir. 2019) (same).

Although the Court can assume at this stage that Martinez meets the first three *McDonnell Douglas* factors, she fails to demonstrate the fourth factor needed to establish a prima facie case. Martinez fails to allege that Northwestern treated similarly-situated non-Hispanic employees more favorably than her. *See McDaniel*, 940 F.3d at 368–69. To the contrary, Northwestern terminated three non-Hispanic Patient Registration Representatives accused of violating the various codes of conduct in the same temporal proximity. (Dkt. 56 ¶¶ 27, 43, 61, 63.) Because Martinez "has not identified any similarly situated [non-Hispanic] employee[] to allow a factfinder to conduct a 'meaningful comparison,' [her] prima facie case for discrimination fails." *Id.*

Even if Martinez could establish a prima facie case under the *McDonnell Douglas* framework, Northwestern has articulated a legitimate, nondiscriminatory basis for her termination: namely, its belief that Martinez violated the *Rules for Personal Conduct* related to the theft of patients' property. An employer's belief that an employee engaged in theft is a nondiscriminatory reason justifying termination. *See Han v. Whole Foods Mkt. Grp., Inc.*, 44 F. Supp. 3d 769, 794 (N.D. Ill. 2014). In

*Han v. Whole Foods Market Group*, an employee filed a discrimination claim after he was fired for eating food in the store. *Id.* The court explained that the defendant "had a policy that it provided to all employees clearly warning that they could be fired for eating food before they paid for it." *Id.* at 794–95. Other employees outside the protected class had also been fired for violating the policy. *Id.* For those reasons, the court found the firing was not pretextual.

Northwestern gave Martinez the policy, and she acknowledged that she read and understood it. (Dkt. 56 ¶¶ 6–7.) At her deposition, Martinez agreed that stealing valuables is "wrong[,]" "against N[orthwestern] policy[,]" and "is a terminable offense." (Dkt. 56, Exh. A, 101:16–102:14.) Martinez further acknowledged that, aside from the terminations of herself, Jackson, Coleman, and Cowin, she is aware of one other Northwestern employee that inappropriately used patient credit card information. (Dkt. 56 ¶ 82.) Northwestern also terminated that non-Hispanic employee. (*Id.*) As Northwestern articulated a "legitimate, nondiscriminatory reason for the adverse employment action[,]" the burden shifts back to Martinez to provide evidence that reason is pretextual. *See McDaniel*, 940 F.3d at 368.

In determining "whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (internal quotation omitted). In the ordinary course, an employer's "lack of knowledge about a protected category rings a death knell for discrimination claims." *Holmes v. Potter*, 384 F.3d 356, 362 (7th Cir. 2004). Martinez's denial of misconduct, moreover,

is insufficient to establish pretext. A court ought not "second-guess" an employer's "business decisions, even if they are wrong or bad," so long as the "employer acted in good faith and with an honest belief." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 899 (7th Cir. 1999). Stray remarks of non-decisionmakers are "typically insufficient to create an inference of discrimination." *Kirley v. Bd. Of Ed. Of Me. Twp. H.S.*, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013).

Martinez fails to demonstrate that Northwestern's "explanation is pretextual." *See Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). Splan and Williamson—the decisionmakers responsible for ordering Martinez's termination— did not know Martinez's race (nor the race of the other terminated employees) at the time of her termination. (Dkt. 56 ¶ 79.) Martinez highlights race-related comments made by one individual not involved in either the termination decision or investigation. (*Id.* ¶¶ 91–93) (employee referred to Hispanic patients as Martinez's "primos" or "cousins[,]" suggested Martinez should better get along with her Hispanic co-worker, and commented on Martinez's "Mexican braid[,]" which Martinez explained was in fact a "French braid").) Those are characteristic "stray remarks" that are insufficient to create an inference of discrimination. *See Kirley*, 2013 WL 6730885, at *8. And although Martinez contends Northwestern fired her so that she could be replaced by a Caucasian, all the Patient Registration Representatives hired in the sixth months after Martinez's termination are either Black or Hispanic. (Dkt. 56 ¶¶ 87–88.)

Martinez has failed to establish a prima facie case of race discrimination. Accordingly, Northwestern is entitled to summary judgment on Count I.

2. *Title VII Retaliation*

To survive summary judgment, a plaintiff's Title VII retaliation claim must present sufficient evidence to create a question of fact as to whether she: (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) there is a but-for causal connection between the two. *See Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). A plaintiff must specifically identify the alleged protected activity at issue. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014).

Martinez's failure to complain about race-based discrimination before her termination dooms her attempt to show that she engaged in a statutorily protected activity. It is "axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity. . . . An employer cannot retaliate if there is nothing for it to retaliate against." *Long v. Tchrs' Ret. Sys. of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009) (quoting *Durkin v. City of Chicago*, 341 F.3d 606, 614–15 (7th Cir. 2003)). Martinez alleges she complained to Wallace about asking her to train new employees without additional pay, but she did not complain that this decision was made out of racial animus. (Dkt. 56 ¶ 94.)

There is also a dearth of evidence showing a but-for connection between any statutorily-protected complaints and any adverse employment action. Martinez did not file any complaints with Human Resources, despite knowing that she was entitled to do so (*id.* ¶ 95), and neither did Martinez raise these complaints with any of the decisionmakers (Wallace was not one) involved in her termination. (*Id.*) Put

11

differently, the record shows that the decisionmakers that terminated Martinez employment were unaware of any statutorily-protected activity by her. Indeed, this disconnect is reflected in Martinez's admission during her deposition that she no longer believes her termination was motivated by retaliation. (*Id.* ¶ 104.)

Martinez has failed to come forward with evidence showing a genuine issue of material fact on her retaliation claim, and the record establishes that Northwestern is entitled to judgment as a matter of law. Accordingly, Northwestern's motion for summary judgment on Count II is granted.

### 3. *Title VII Harassment/Hostile Work Environment*

To survive summary judgment on a Title VII hostile work environment claim, a plaintiff must demonstrate that she: (1) was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile work environment; and (4) there is a basis for employer liability. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018). As to the third element, a court must consider whether the race-based conduct is severe, frequent, physically threatening or humiliating, and whether it interfered with the employee's performance. *Id.* at 881. And when the alleged harasser is a coworker, rather than a supervisor, an employer is liable under the fourth element above only if it knew or should have known about such harassment and failed to take steps to remedy it. *Burrell v. UPS, Inc.*, 163 F. Supp. 3d 509, 523 (N.D. Ill. 2016).

Although Martinez meets the first two elements of a hostile work environment claim at this stage in litigation, she cannot meet the last two. Martinez relies on racial

12

comments made by Wallace about a purported affinity for Hispanic patients and coworkers, and a comment mischaracterizing her "French" braid as "Mexican." (Dkt. 56 ¶¶ 17, 91–95.) Those comments were unwelcome and could be characterized as based on her race. *Swyear*, 911 F.3d at 880. But they do not reach the high hurdle required to meet the third element of harassment claims. *See*, *e.g.*, *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 546 (7th Cir. 2011) ("Gestures or comments" of a racial nature failed to establish "conduct [that] was anything more than immature and ignorant behavior."). Reviewing the conduct in the aggregate "reveals 'boorish conduct . . .' but not to the extent that it meets the legal requirements of [finding a hostile work environment]." *Id.* (quoting *Durkin v. City of Chicago*, 341 F.3d at 613). Moreover, Martinez never complained about Wallace's behavior to any supervisor. (Dkt. 56 ¶ 95.) Indeed, she never complained despite Northwestern's policy against harassment that provides multiple avenues for reporting. (*Id.* ¶ 9.)

Martinez has failed to come forward with evidence showing a genuine issue of material fact on her Title VII harassment/racial discrimination claim, and the record establishes that Northwestern is entitled to judgment as a matter of law. Accordingly, Northwestern's motion for summary judgment on Count III is granted.

### 4.   *Wrongful Termination Against Public Policy*

Retaliatory discharge under Illinois law requires a plaintiff to demonstrate that she: (1) was discharged; (2) in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy. *Mack v. City of Chicago*, 2019 WL 1331786, at *9 (N.D. Ill. Mar. 25, 2019) (citing *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019)). Whether the discharge violated public policy requires

that the aggrieved policy be "found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law." *Roberts v. Bd. of Trs. Cmty. Coll. Dist. No. 508*, 135 N.E.3d 891, 896 (Ill. 2019). Martinez does not cite to any specific federal or state policy that her firing would violate. (*See, e.g.*, Dkt. 93.) As the Seventh Circuit has explained, the "absence of a 'clearly mandated public policy' on which to base the retaliatory discharge claim is fatal to [such] claims." *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 925 (7th Cir. 1990) (affirming a dismissal under Rule 12(b)(6) where a retaliatory discharge claim failed to cite a public policy violation); *see also Jackson v. Nw. Mem'l Hosp.*, No. 19-cv-04924, 2020 WL 6801843, at *2–3 (N.D. Ill. Nov. 19, 2020) (dismissing claim for wrongful termination against public policy under Rule 12(b)(6)).

Martinez has failed to come forward with evidence showing a genuine issue of material fact on her wrongful termination against public policy, and the record establishes that Northwestern is entitled to judgment as a matter of law. Accordingly, Northwestern's motion for summary judgment on Count IV is granted.

### 5. *Breach of Contract*

Martinez also fails to plausibly allege an oral or written contract that precludes her firing or alters her at-will employment. Indeed, another judge in this District recently dismissed allegations from one of Martinez's former colleagues at the pleading stage. As Judge Valderrama explained, "Northwestern notes that to state a claim for an oral contract for employment that is not at-will, a plaintiff must include allegations that reflect an offer and acceptance, consideration, definite and certain

14

terms, performance of all required contractual conditions, breach by the employer, and resulting damages." *Id.* at *3.

Although this case is at the summary judgment stage, precedent permits summary judgment when a plaintiff fails to provide proof of a written or oral contract—including "proof of consideration." *Bower v. Jones*, 978 F.2d 1004, 1013 (7th Cir. 1992); *see also Extra Equipamentos v. Case*, 541 F.3d 719, 724 (7th Cir. 2008) (finding summary judgment appropriate when no reasonable jury could find for a party on a contractual claim); *Barsky v. Metro Kitchen & Bath, Inc.*, 587 F. Supp. 2d 976, 994 (N.D. Ill. 2008) (explaining the difficulties under Illinois law of proving a contract claim that relies on promissory fraud). As in *Jackson*, Martinez has "fail[ed] to plead," let alone cite proof of, any "terms of the alleged oral contract that promised termination only for cause." *Id.* On the contrary, Martinez admitted in her deposition that she was an at-will employee that the employer could "terminate [] whenever." (Dkt. 56, Exh. B at 290:6–18; *see also* Dkt. 56 ¶ 109 (acknowledging a lack of any written agreement).) Martinez's subjective belief (Dkt. 56, Exh. B 306:13–308:18) that Northwestern required "substantial evidence" to fire her does not create a genuine issue of material fact.

Martinez fails to allege the existence of—much less violations of—an oral or written contract requiring cause for termination. As a result, Northwestern's motion for summary judgment on Count V is granted.

### 6. *Fraudulent Misrepresentation*

In Count VI, Martinez alleges that Northwestern fraudulently misrepresented both her career potential at Northwestern and that Martinez would not be subject to

discharge without cause and investigation. (Dkt. 6 ¶¶ 116–30.) As in *Jackson*, which addressed substantially similar claims, the Court holds that "the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to claims for fraudulent misrepresentation." *Jackson*, 2020 WL 6801843, at *5. Rule 9(b) requires plaintiffs to allege the "who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Martinez's uncertain and vague allegations—and resulting lack of proof—does not "comport with Rule 9(b)'s particularity requirement." *Jackson*, 2020 WL 6801843, at *5. Under Illinois law, fraud must be proved "by clear and convincing evidence, and not just by a preponderance of the evidence." *Extra Equipamentos*, 541 F.3d at 724 (internal citations omitted). In addition to her pleading deficiencies—which alone could justify summary judgment, *Greenberger v. Geico General Insurance Company*, 631 F.3d 392, 401 (7th Cir. 2011) (granting summary judgment on a fraudulent concealment claim when plaintiff failed to plead with specific particularity the circumstances supporting that claim)—Martinez has not taken advantage of the ample opportunity to support her fraud claim with evidence establishing a genuine issue of fact about the purported fraudulent misrepresentation. *See Bower*, 978 F.2d at 1004. Indeed, Martinez admitted that she was an at-will employee and that she did not have a written contract with Northwestern (Dkt. 56 ¶ 109), and Martinez was unable to provide any other facts showing the details of the purported fraud. (*Id.* ¶ 110.)

Martinez has failed to allege and to put forth evidence of any fraudulent misrepresentation such that a jury could find for her on that claim. Accordingly, Northwestern is entitled to summary judgment on Count VI.

## B. Motion for Sanctions (Dkt. 60)

It is clear that the Court possesses the discretion to award attorneys' fees and sanctions. Rule 11 of the Federal Rules of Civil Procedure requires that "when an attorney or party files papers with the court, they certify that to the best of their knowledge, information, or belief, formed after an inquiry reasonable under the circumstances, that the claims or legal contentions set forth are warranted by law and the factual contentions in the papers have evidentiary support." *Momo Enters., LLC v. Banco Popular of N. Am.*, 2017 WL 4357390, at *1 (N.D. Ill. Sep. 30, 2017), *aff'd* 738 F. App'x 886 (7th Cir. 2018). Rule 11 imposes "an affirmative duty of reasonable investigation by an attorney 'signing, filing, submitting, or later advocating' any court document." *Capuano v. Consolidated Graphics, Inc.*, 2007 WL 2088682, at *2 (N.D. Ill. July 20, 2007).

Sanctions are "deemed appropriate where the party has not filed a complaint for proper purposes, but instead presents its claims to harass or cause unnecessary delay or expense." *Chicago Reg'l Council of Carpenters Pension Fund v. FAC Constr. & Design, Inc.*, 2011 WL 6369792, at *2 (N.D. Ill. Dec. 15, 2011). To determine if sanctions are warranted, a court must first determine whether there is good faith that a given "paper is not interposed to harass." *Id.* Second, the court must inquire as to whether the legal theory being proposed is "objectively warranted by existing law;

and the lawyer must believe that the complaint is well grounded in fact." *Id.* (quoting *Tabrizi v. Village of Glen Ellyn*, 883 F.2d 587, 592 (7th Cir. 1989)).

In its discretion, the Court declines to impose sanctions in this case. That said, the conduct of Plaintiff and her counsel is not blameless. Various counts in the Amended Complaint (Dkt. 6) allege race-based retaliation by Northwestern against Martinez. Yet Martinez admitted during her deposition that she never engaged in any of the protected activity that would have led to retaliation, that she never filed any complaint that would have led her supervisors to retaliate, and that none of the conduct about which she complained was based on her race. (Dkt. 61 at 5) (citing 42 U.S.C. § 2000e-3(a); *Skiba*, 884 F.3d at 718–19).) Martinez's response (Dkt. 93) to the motion for summary judgment also came close to the line of forfeiture. Rather than being a substantive brief, the Plaintiff's response is styled in the format of an answer to Defendant's summary judgment motion that fails to engage with the law and precedents raised in Defendant's supporting memorandum. *See, e.g., Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("[P]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived"); *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point").

Although Martinez's deposition admissions undercut her case, that alone does not warrant sanctions. On the current record, the Court cannot be certain that Martinez's counsel failed to conduct a sufficient pre-suit inquiry; it is possible that

18

Martinez's pre-suit comments to counsel were sufficient to satisfy counsel's duty under Rule 11. And it is possible that Martinez's statements at her deposition were both developed and shaded by the twin truth-generating devices of the pre-deposition oath and a skilled cross-examination—neither of which was likely present at the time suit was filed. Without more, therefore, the Court is unwilling to take the significant step of imposing sanctions.

### C.    Motion to Strike (Dkt. 106)

In addition to the motion to dismiss, Northwestern filed a motion to strike parts of Martinez's filings under Rule 12(f). (Dkt. 106.) Northwestern seeks to strike Martinez's allegations in the Plaintiff's response to Defendant's Local Rule 56.1(a)(2) Statements of Material Facts (Dkt. 95) and Plaintiff's Local Rule 56.1d Statement of Additional Material Facts (Dkt. 94) that relate to "certain deposition testimony that has been designated as 'Confidential' pursuant to protective orders in a separate case, *Jackson v. Northwestern Mem'l Hosp.*" (Dkt. 106 ¶¶ 1–2.) Northwestern raises concerns that the protective orders in *Jackson* preclude using such material outside of the that litigation, as elaborated in Exhibit E attached to Northwestern's motion. (*Id.* at ¶ 5; *see* Dkt. 106-1.) Northwestern thus seeks to strike those paragraphs that it alleges violates the relevant confidentiality orders. (Dkt. 106 ¶ 8).

Martinez admits that the depositions in question were confidential, but counters that, as she shares an attorney with the plaintiff in *Jackson*, "both Plaintiff and Defendant's counsel know the facts that were revealed at the depositions." (Dkt. 110 ¶ 2.) Martinez contends that, by sharing the filings with this Court, she is not

violating the orders because disclosure is authorized to "the Court and its personnel." (*Id.* ¶ 1.)

District courts may—but are not required to—strike "from a pleading allegations that are 'redundant, immaterial, impertinent or scandalous.' " *Brady for Smith v. SSC Westchester Operating Co. LLC*, — F. Supp. 3d. —, 2021 WL 1340806, at \*6 (N.D. Ill. Apr. 9, 2021) (quoting Fed. R. Civ. P. 12(f)). Motions to strike "are generally disfavored." *Id.* (citing *Olson v. McGinnis*, 986 F.2d 1424 (7th Cir. 1993)). A court has "considerable discretion" in deciding "whether to strike materials in a complaint." *Id.* (quoting *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009)).

Both Martinez and Northwestern agree that confidentiality orders in *Jackson* limit the use of the *Jackson* deposition transcripts. (Dkt. 110 ¶ 3; Dkt. 106 ¶ 1.) Northwestern is likely correct that the confidentiality orders preclude using the *Jackson* deposition transcripts in *this* matter. And the Court reminds Martinez that her motion for leave to file deposition transcripts from other proceedings was previously denied. (Dkt. 85). But although Martinez attempted to rely on confidential deposition transcripts in what was likely an improper manner, the better forum to vindicate the *Jackson* confidentiality orders is in that case, not here. In any event, the motion for summary judgment has gone in Northwestern's favor. Accordingly, the motion to strike is denied.

## IV.  CONCLUSION

Northwestern's Motion for Summary Judgment (Dkt. 53) is granted as to all claims. Northwestern's Motion to Dismiss for Failure to State a Claim (Dkt. 14) is

dismissed as moot. Northwestern's motion for sanctions (Dkt. 60) and motion to strike (Dkt. 106) are denied.

SO ORDERED in No. 19-cv-04923.

Date: October 7, 2021

JOHN F. KNESS
United States District Judge